# CASES

## IN THE

# SUPREME JUDICIAL COURT,

### OF THE

## STATE OF MAINE.

---

BENJAMIN F. WOODBURY, in equity,

*vs.*

PORTLAND MARINE SOCIETY, and others.

Cumberland.   Opinion February 24, 1897.

*Corporation.   Charitable Relief.   Injunction.*

The Portland Marine Society, a corporation of ancient origin, was created for the purpose of extending relief as occasion might require, to "decayed and disabled seamen, and to the poor widows and orphan children of deceased seamen, and for the promotion of seamanship and navigation." It has accumulated considerable property and funds from the entrance fees paid by members and annual dues. Lately, in order to keep up a social interest in the society and promote its welfare, it has been accustomed to give to its members an annual dinner. The complainant, one of its members, sought by a bill in equity to suppress the practice by inhibiting such an entertainment after it was contracted for and virtually in readiness to be partaken, and failing to obtain an injunction in the court below, now, upon appeal to this court, insists that the cost of the banquet, already long ago paid for out of the plentiful funds of the society, shall be collected from those members of the society who participated therein.   *Held;* that while the court is unwilling to declare the practice to be legal, or to authorize or encourage its continuance, it does not deem it expedient to sustain the bill under the circumstances now existing.

The bill also sought to enjoin the payment of fifteen dollars which the society voted that its treasurer pay to a poor and worthy person, the bill alleging that such person does not belong to that class of beneficiaries of the society

VOL. XC.   2

entitled to relief from its charitable funds. But the defendants claimed that the person belongs in fact to the class to whom the society may extend charitable aid.

*Held;* that the officers of the society, acting in good faith, may decide such questions for themselves, when trivial amounts only are involved. Equity does not stoop to pick up pins.

IN EQUITY. ON APPEAL BY PLAINTIFF.

The case is stated in the opinion.

*Eben Winthrop Freeman,* for plaintiff.

Here is a private corporation with defined powers. An ultra vires act is threatened. Bill is brought, with prayer for injunction and general relief. The act is done. Injunction now would not meet the exigency of this case. Restitution will. What then is the duty of this court? Clearly, a decree for restitution with costs.

The plaintiff as a proper party brought this bill. He had a right to ask this court to restrain these acts. Pending the suit, a defendant by an act, which amounts to fraud, cannot constitute a proper plaintiff an improper plaintiff. Pending the suit he can no more change the existing status of the plaintiff than he can impair the power of a court to grant justice for his fraudulent act.

The State by its attorney general can intervene only when the corporation or the charitable fund is a public one. In the principal case it is private. The fund was established for disabled seamen and their families. It is a restricted and private fund. The State is not interested.

*H. and W. J. Knowlton,* for defendants.

This cause has been twice heard: first upon the prayer for temporary injunction, and later fully upon bill, answer and proof and judgment and decree for respondents at each hearing.

The appellant must show the decree appealed from to be clearly wrong, otherwise it will be affirmed. *Paul* v. *Frye,* 80 Maine, 26 ; *Gilpatrick* v. *Glidden,* 81 Maine, 137.

Complainant should set out the vote appropriating or authorizing the payment of three hundred dollars, also the fifteen dollars as alleged, instead of stating its purport.

Complainant states only his fears or apprehension which is not sufficient to authorize the injunction prayed for. High on Injunction, 3d edition, § 1184.

Courts of equity rarely interfere with the exercise of discretionary powers by corporate bodies or their officers. Ib. § 1186.

Complainant individually cannot have an injunction of a practice in which he has participated for several years without complaint, as the testimony shows in this case.

Complainant cannot have his co-trustees, acting in their corporate capacity, enjoined from carrying out any vote of a majority. Trustees are only required to conduct themselves faithfully and exercise sound discretion. *Lovell* v. *Minot*, 20 Mass. 119; *Harvard College* v. *Amory*, 9 Mass. 489.

Complainant has sustained no injury personally, and cannot have judgment in his favor. He is not a stockholder, but a member of the corporation which he seeks to have enjoined.

The fund of the society is a public fund and injunction is not authorized, except by proper process in behalf of the State. The application of Mrs. Annie C. Bowen for aid was passed upon by the society and allowed. The right to its benefits was settled finally by the vote of the corporation, it being the only body authorized to pass upon applications for aid.

The action of the society in holding banquets is fully justified by the result.

The fund has not been diminished, but has been largely increased by the holding of banquets.

SITTING: PETERS, C. J., WALTON, EMERY, WHITEHOUSE, WISWELL, JJ.

PETERS, C. J. This bill in equity, instituted by a single complainant, as a member of the Portland Marine Society, against that corporation and its president and treasurer, to restrain the society from contracting for a banquet for its members on a certain public occasion, or to prevent payment for the same from the funds of the society if already contracted for, was heard below and

comes to this court by appeal from a decree by the sitting justice refusing to sustain the bill.

The decree recites the more material facts and states the reasons for refusing the equitable aid asked for; and is as follows:—" This case came on for hearing on bill, answer and proofs and has been argued by counsel, and it appeared:

" That in 1796 the defendant society was created by the Commonwealth of Massachusetts for 'the promotion of the knowledge of navigation and seamanship, the relief of decayed and disabled seamen and the poor widows and orphans of deceased seamen,' and empowered to hold property to the amount yielding an annual income of six thousand dollars for such purpose.

" The by-laws limit two-thirds of its members to persons who are or have been masters of vessels, and restrict aid to such persons, their widows and children. The society has accumulated a fund of over $27,000, and its annual income is about $1700. In 1889 the membership had decreased to twenty, and an effort was then made to renew interest in the society and increase its membership, resulting in raising the same to about sixty—now fifty-six. To this end annual dinners were inaugurated, to be paid for by the society at a cost of from $101.10 in 1889 to $136.95 in 1894. In 1895 the society paid nothing for the purpose. In December, 1895, the society appropriated three hundred dollars for a dinner, it being its centennial anniversary. To this use of the funds, the plaintiff objected and filed his bill to restrain payment. A preliminary injunction was moved, but denied by a justice of this court, and the funds were applied to this purpose, viz: $282.30.

" It is considered by the court that while such expenditure may not come within the scope and purpose of the charity created by the founders of the society, and is of questionable propriety, still, inasmuch as done in good faith and with honest motives, and the scope of the plaintiff's bill is so narrow as to embarrass the granting of adequate relief, and the other ground has no merit: It is therefore ordered, adjudged and decreed that the plaintiff's bill be dismissed, but without costs."

The decree rather understates than overstates the case, and a few other facts may be added. There were only two members of the society voting against the appropriation complained of, and no part of the principal funds of the society were encroached upon for the expenses of the entertainment, the necessary amount having been taken from certain unexpended interest money remaining at the time on hand.

Much is said in behalf of the complainant concerning the society as an institution strictly for charitable purposes. It was not altogether or even principally a charitable association. The act creating the society declares, "that the end and design of the institution of said society is the promotion of the knowledge of navigation and seamanship, the relief of decayed and disabled seamen, and the poor widows and orphans of deceased seamen."

Quite onerous duties are imposed on members of the society. Article nine of the by-laws provides as follows:—"It is enjoined on every maritime member of this Society, on his arrival from sea, to communicate to the President his observations, respecting the variation of the needle, the soundings, courses and distances; and all other things remarkable about this coast, as well as any particular observations promotive of nautical knowledge, in writing, to be examined and digested by the committee appointed by the Society for that purpose, and lodged with the Secretary to be recorded in the books of the Society."

The marine or regular members are required upon their admission to pay the sum of twenty dollars each and pay an annual assessment afterwards of ten cents a month for at least twenty-five years, and honorary members may be admitted in consideration of donations to the society of not less than twelve dollars each ; and the latter are not eligible to office in the society and are not entitled to any benefits from its funds. And certain social duties and obligations are also imposed upon all the members alike.

The language of the decree hardly describes fully the stimulating influence of the efforts made in 1889 to increase the membership of the society and awaken an interest in its general welfare by converting it into a more social organization, the new feature

being an annual entertainment and dinner for its members. The by-laws were revised by which the admission fee of regular members was raised from twelve to twenty dollars, and more new members were added in two years after that time than had been admitted for the thirty years before, and there is every reason to believe that the new social feature of the society caused such increase of its prosperity. It was a means of bringing all the members together at least once each year, and the movement was decidedly a popular one. A participation in the annual banquet was the only compensation received or that was ever expected to be received by the members for all their contributions and services in behalf of the society. Who ever heard of an objection to our colleges providing a dinner for their graduates on commencement day?—and still it is to be presumed that there is no clause in any college charter permitting it. The college receives its compensation for the outlay in the promotion which the occasion invites for its welfare. Municipal corporations are constantly appropriating small sums for different sorts of public though not technically legal purposes, and a court of equity is rarely called upon to restrain them by injunction although such municipal practice may not be in all cases even a commendable one. The question is not without some authority. In Grant on Corporations, an old English work, it is said at page 80 :—" A by-law involving an expenditure of the funds of the corporation, without an adequate advantage accruing to the corporation, is bad, as being unreasonable; and, therefore, a by-law to compel the giving of a dinner must show that it is for a beneficial purpose, or that an interest of the corporation is in some way promoted by it, or it will be invalid." To this text the author cites quite a number of old decisions.

The extraordinary remedy of injunction should be applied, so the leading authors say, only in very clear cases; and whether the remedy shall be granted or withheld must depend, they also say, upon which course may be required upon the grounds of expediency and sound public policy; especially where public rather than private rights are involved. In the present case an injunction was refused, the money for the entertainment has been expended, and

it does not impress us as expedient or feasible to attempt to reclaim it. Whilst we do not decide, and there is no occasion for our so deciding, that the practice of the society in providing annual entertainments to be paid for out of its ordinary funds, is strictly legal or justifiable, we feel that this particular bill under the circumstances better not at this stage of the proceedings be sustained. Future entertainments of the kind better perhaps be paid for by a fund to be contributed by the members of the society for such special purpose.

There is another claim presented by the bill not specifically mentioned in the decree. The bill claims that the society voted to pay fifteen dollars as a charitable contribution to a certain poor woman named, and that she did not belong to the class of persons entitled to receive a benefit as a beneficiary of the society. But the defendants claim that, as a matter of fact, she does come within the description of persons to whom the society may extend charitable aid. The officers of the society must be entitled, acting in good faith, to decide such questions for themselves when trivial amounts only are involved. Equity does not stoop to pick up pins.

*Bill dismissed without costs.*